Filed 6/29/22  In re Vanessa C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re VANESSA C. et al., Persons Coming Under the Juvenile Court Law. | B312468<br><br>(Los Angeles County Super. Ct. Nos. 21CCJP00714) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JOVANNI F.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael D. Abzug, Judge.  Reversed in part, conditionally affirmed in part with directions, and dismissed in part.

Jane B. Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

**INTRODUCTION**

Jovanni F., father of four-year-old J.F. and three-year-old V.F., appeals from the juvenile court's jurisdiction findings and disposition orders declaring J.F. and V.F. dependent children of the court under Welfare and Institutions Code section 300 and removing them from his care.[1]  Jovanni challenges the court's jurisdiction findings under section 300, subdivisions (a) and (b)(1), based on his and his girlfriend's history of domestic altercations; the court's jurisdiction findings under section 300, subdivisions (b)(1), (d), and (j), based on his sexual abuse of his children's older sibling; and the disposition orders based on these findings.  He also contends the Los Angeles County Department of Children and Family Services failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.

We conclude that the juvenile court erred in sustaining the petition under section 300, subdivision (a), based on Jovanni and his girlfriend's domestic altercations, but that the court did not err in sustaining the petition on that ground under section 300, subdivision (b)(1).  We also conclude that the juvenile court did

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

not err in sustaining the petition under section 300, subdivision (d), based on Jovanni's sexual abuse, and that therefore his remaining challenges to the jurisdiction findings based on sexual abuse are nonjusticiable. And we conclude the juvenile court did not err in making its disposition orders. Finally, we agree with Jovanni that neither the juvenile court nor the Department complied with ICWA's inquiry requirements.

Therefore, we reverse the juvenile court's jurisdiction finding under section 300, subdivision (a). We conditionally affirm the jurisdiction finding under section 300, subdivision (b)(1), based on the parents' domestic altercations, the jurisdiction finding under section 300, subdivision (d), and the court's disposition orders. We also dismiss Jovanni's remaining jurisdiction challenges. We direct the juvenile court to ensure the Department complies fully with the inquiry and, if necessary, notice provisions of ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

Jovanni and his girlfriend, Vanessa R., were living with their children, J.F. and V.F., and Vanessa's 13-year-old daughter (by another father), V.C., when in February 2021 the Department filed a section 300 petition alleging juvenile court jurisdiction over J.F. and V.F.[2] In identical counts pleaded under section 300, subdivisions (a) and (b)(1), the Department alleged Jovanni and Vanessa had "a history of engaging in physical and verbal altercations in the presence of the children." More specifically,

---

[2]　The Department also alleged juvenile court jurisdiction over V.C., but this appeal does not concern any ruling regarding her.

the Department alleged:  On one occasion, Vanessa pushed Jovanni in the presence of V.C.; on another occasion, Vanessa pulled Jovanni's beard; on another occasion, Vanessa elbowed Jovanni in the mouth, bruising his lip; in V.C.'s presence Jovanni threatened to take the children from Vanessa; on multiple occasions law enforcement responded to Jovanni and Vanessa's home because of altercations; and these physical and verbal altercations between Jovanni and Vanessa endangered the children's physical health and safety, placing them at risk of serious physical harm.

In addition, in identical counts pleaded under section 300, subdivisions (b)(1), (d), and (j), the Department alleged Jovanni "sexually abused" V.C.  More specifically, the Department alleged that on one occasion Jovanni entered V.C.'s bedroom and rubbed her inner thigh area above the knee with his hand; while continuing to rub her thigh, he moved his hand toward her waist; and he then placed his fingers inside her pants, while she repeatedly told him to stop.  The Department also alleged that on another occasion Jovanni fondled V.C.'s breasts while she lay in her bed and that on still another occasion he "demonstrated putting a condom on a cucumber" for V.C.  The Department alleged Vanessa knew of these instances of sexual abuse, failed to take action to protect V.C., and allowed Jovanni unlimited access to V.C. and her siblings.  The Department further alleged Jovanni's sexual abuse of V.C. and Vanessa's failure to protect V.C. endangered V.C.'s physical health and safety and placed her and her siblings at risk of serious physical harm.

4

At a jurisdiction hearing in April 2021, the juvenile court sustained all five counts.[3]  At disposition the court declared J.F. and V.F. dependent children of the court, removed them from their father, and released them to Vanessa.  The court ordered Jovanni to participate in counseling programs for domestic violence, parenting, and sexual abuse and ordered him to have monitored visits with J.F. and V.F. and no visits with V.C. (though the court gave the Department "discretion to liberalize" his visits (actually, lack of visits) with V.C.).  Jovanni filed a timely notice of appeal from the disposition order.

While this appeal was pending, the juvenile court terminated its jurisdiction over J.F. and V.F. with a juvenile custody order awarding sole physical custody of the children to Vanessa and joint legal custody of the children to Vanessa and Jovanni.  Jovanni filed a separate notice of appeal from the order terminating jurisdiction.

## DISCUSSION

A.  *At Least Some of Jovanni's Challenges to the Jurisdiction Findings Are Justiciable*

Observing that Jovanni challenges only those jurisdiction findings relating to his conduct (and not those relating to Vanessa), the Department argues Jovanni's challenges are nonjusticiable because the juvenile court also assumed jurisdiction over J.F. and V.F. based on true findings relating to Vanessa's conduct.  Jovanni concedes that "jurisdiction lies [here]

---

[3]    The court dismissed a number of other counts that are not relevant to this appeal.

5

based on findings concerning each parent," but argues that we should exercise our discretion to reach the merits of his appeal from the jurisdiction findings because the challenged findings were the bases for the juvenile court's disposition orders, could adversely affect him in further dependency proceedings, and might have additional negative consequences for him, such as putting him at risk of inclusion on the Child Abuse Central Index. We agree with Jovanni in part.

A child is a dependent child of the juvenile court "'if the actions of either parent bring [the child] within one of the statutory definitions of a dependent,'" and "'[f]or this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.) "However, an appellate court may address the merits of the jurisdictional findings against one parent where 'the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction."'" (*Id.* at p. 309.)

Jovanni challenges the juvenile court's jurisdiction findings based on his engaging in domestic violence and his sexual abuse of V.C., as well as the disposition orders requiring him to participate in counseling programs addressing those behaviors. This is sufficient reason for us to consider whether substantial evidence supported jurisdiction findings based on Jovanni's engaging in domestic violence and sexual abuse. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 238 [exercising discretion to review jurisdiction findings that were the basis for a disposition order].)

6

As we will explain, however, we need not, and do not, reach the merits of Jovanni's challenges to all the jurisdiction findings based on his engaging in sexual abuse.

>    B.    *The Juvenile Court Did Not Err in Sustaining the Petition Based on Jovanni and Vanessa's History of Domestic Altercations and Jovanni's Sexual Abuse*

>    1.    *Applicable Law and Standard of Review*

"The purpose of section 300 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.'" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601; see § 300.2.) "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citations.] The court may consider past events in deciding whether a child presently needs the court's protection." (*In re Cole L.*, at pp. 601-602.)

Section 300, subdivision (a), "provides for jurisdiction when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted *nonaccidentally* upon the child by the child's parent or guardian . . . .'" (*In re Jonathan B.* (2015) 235 Cal.App.4th 115, 118; see § 300, subd. (a).) "'Nonaccidental' generally means a parent or guardian 'acted intentionally or willfully.'" (*In re Cole L., supra,* 70 Cal.App.5th at p. 601.)

Section 300, subdivision (b)(1), "allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of a custodian with whom the child has been left.'  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 601.)

Section 300, subdivision (d), provides for jurisdiction when the "child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by . . . a member of the child's household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."  "Penal Code section 11165.1, subdivision (a), provides that '"sexual abuse" means sexual assault or exploitation' and lists a number of offenses that qualify as 'sexual assault or exploitation.'  Most of the offenses listed involve physical touching, child trafficking/prostitution, or pornography.  Penal Code section 11165.1, subdivision (b)(4), describes 'intentional touching' as '[t]he intentional touching of the genitals or intimate parts . . . of a child, . . . for purposes of

sexual arousal or gratification . . . .'" (*In re L.O., supra,* 67 Cal.App.5th at p. 241.)

Section 300, subdivision (j), "provides that any child may come within the jurisdiction of the juvenile court if '[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.' . . . 'Because the assessment of risk to a sibling depends in part on the circumstances of an abused or neglected child, "subdivision (j) implies that the more egregious the abuse, the more appropriate for the juvenile court to assume jurisdiction over the siblings."'" (*In re D.B.* (2018) 26 Cal.App.5th 320, 327-328.)

"'"In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'"'" [Citations.] However, '[s]ubstantial evidence is not synonymous

with any evidence.  [Citation.]  To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.'" (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602.)

> 2. *Substantial Evidence Supported the Jurisdiction Finding Under Section 300, Subdivision (b)(1), Based on Jovanni and Vanessa's Domestic Violence, but Not Under Section 300, Subdivision (a)*

Jovanni contends the evidence regarding his and Vanessa's domestic altercations did not support juvenile court jurisdiction under section 300—whether under subdivision (a) or subdivision (b)(1).  He concedes he and Vanessa had a history of altercations, but argues these were primarily verbal, did not involve intentional acts toward any of the children, and took place while the children were in another room.  Although we agree with Jovanni substantial evidence did not support the jurisdiction finding under section 300, subdivision (a), we conclude substantial evidence did support the finding the couple's history of domestic altercations brought the children within the jurisdiction of the juvenile court under section 300, subdivision (b)(1).

"Under certain circumstances incidents of domestic violence between a child's parents, if they occur in the child's immediate presence, may support a jurisdiction finding under section 300, subdivision (a).  [Citation.]  For example, if a father strikes an infant's mother while she is holding the child or an older child intervenes during a fight to protect her mother from her father's

10

abuse, the risk of harm to the child may be properly viewed as nonaccidental." (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 603.)

"The somewhat more common potential for accidental injury during parents' physically violent fights in the presence of bystander children, however, constitutes a failure or inability to protect the child, creating the potential for dependency jurisdiction under section 300, subdivision (b)(1) (and possibly section 300, subdivision (c)), but not subdivision (a). [Citations.] Acts of domestic violence themselves, of course, are intentional. But a finding under section 300, subdivision (a), requires evidence of a risk of physical injury 'inflicted nonaccidentally upon the child.' An unintended injury to a bystander child that results from an intentional act directed at another—for example, due to an object thrown by one parent at another during an argument—does not satisfy that statutory requirement." (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 603.)

There was no evidence here to support a jurisdiction finding under section 300, subdivision (a), based on incidents of domestic violence. There was no evidence that Jovanni or Vanessa ever inflicted nonaccidental injury on any of the children during their altercations or that a child was ever in the immediate physical presence of an altercation. In fact, the Department does not try to cite any such evidence, suggesting instead that "this Court need not separately consider whether jurisdiction was proper under subdivision (a)." We have, however, and it was not.

But substantial evidence did support the jurisdiction finding based on the couple's domestic altercations under section 300, subdivision (b)(1). ""'[D]omestic violence in the same household where children are living . . . is a failure to protect [the

11

children] from the substantial risk of encountering the violence and suffering serious physical harm . . . from it,"'"" as contemplated by section 300, subdivision (b)(1). (*In re R.C.* (2012) 210 Cal.App.4th 930, 941-942; see *In re S. O.* (2002) 103 Cal.App.4th 453, 460-461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"].) "Jurisdiction is appropriate since a minor can be 'put in a position of physical danger from this violence, since, for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . .'" (*In re L.O.*, *supra*, 67 Cal.App.5th at p. 238; see *In re R.C.*, at pp. 941-942.)

The evidence showed that, between January 2019 and January 2021, police officers responded five times to reports of domestic violence between Jovanni and Vanessa.[4] Although many of these conflicts appear to have been verbal, there was substantial evidence the arguments became physically violent. For example, Jovanni told the Department that Vanessa "pushes and shoves him in anger when he wants to leave the house"; that Vanessa "purposely elbowed him in the face during an argument," causing his lip to swell; and that during another

---

[4] The couple's well-documented history of domestic violence distinguishes this case from *In re Cole L.*, *supra*, 70 Cal.App.5th 591, on which Jovanni primarily relies. (See *id.* at pp. 604-605 [juvenile court erred in assuming jurisdiction under section 300, subdivision (b)(1), based on the parents' supposed "'long history of . . . domestic violence issues,'" where there was no evidence in the record of such a history].)

argument Vanessa "pull[ed] his beard in anger," leaving a red scratch mark. V.C. reported that Jovanni and Vanessa "fight like cats and dogs" and that Vanessa "pushes [Jovanni] at times as he gets close to her face." In addition, Vanessa reported that Jovanni "gestures to hit her" and that, though he has not hit her, she "feels that [he] wants to," "thinks he will," and "is fearful."

True, there was little evidence the children were ever in the same room with Jovanni and Vanessa during these altercations. But as Jovanni concedes, and the record shows, the children were in the home when the altercations occurred, and V.C., at least, witnessed some of the altercations firsthand. Given that these altercations were regular occurrences, substantial evidence supported the juvenile court's finding they put the children at substantial risk of physical harm. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 134 [though not present during an incident of domestic violence between her parents, the child was at substantial risk of physical harm because the domestic violence was ongoing and likely to continue].) As one court has stated in a related context: "The court need not wait for disaster to strike before asserting jurisdiction. [Citation.] This is why the statute uses the word 'risk.'" (*In re K.B.* (2021) 59 Cal.App.5th 593, 603.)

3.     *Substantial Evidence Supported the Jurisdiction Finding Under Section 300, Subdivision (d)*

Jovanni contends the juvenile court also erred in sustaining the allegations of sexual abuse under section 300, subdivision (d), because V.C.—the initial source of the allegations—subsequently recanted all but the allegation concerning the condom-on-a-cucumber demonstration, which Jovanni maintains was

13

insufficient to support jurisdiction.  Substantial evidence, however, supported the juvenile court's finding.

In January 2021 police officers responded to a call of a domestic disturbance between Jovanni and Vanessa.  V.C., who was 13 years old at the time, asked the officers if she could speak with them privately.  Alone with the officers, V.C. reported that in December 2020 Jovanni entered her room while she was lying on her bed and, over her pants, began "rubbing [her] inner thigh area just above her knees with his hands."  According to V.C., Jovanni said, "This is how boys are going to touch you," and told her to tell him when to stop.  She felt uncomfortable and immediately told him to stop, but he continued to rub his hands on her thighs until he reached her waistline, where he began to place his fingers insider her pants.  Again she told him to stop, and this time he removed his hands from her and left the room.  V.C. also said Jovanni later told her he once entered her room while she was sleeping and, attempting to wake her, "grabbed her breasts with his hands."  V.C. told the officers Jovanni did not give any further details about what happened on that occasion or indicate "whether his actions were intentional."  When the officers informed Vanessa of V.C.'s disclosures, Vanessa "admitted having some suspicion."

On February 5, 2021, when interviewed by a Department social worker, V.C. repeated the same assertions concerning the two incidents of sexual touching by Jovanni that she had reported to the investigating police officers, adding the detail that, during the incident where Jovanni rubbed his hands over her legs, he "was high on marijuana."  She also told the social worker that on another occasion Jovanni "brought a condom out and showed [her] how to put it on a cucumber."  V.C. said that

14

this happened only once and that she did not tell Vanessa about it right away because Vanessa seemed happy with Jovanni and V.C. "didn't want to ruin it." V.C. said that, when she eventually told Vanessa about the cucumber demonstration, Vanessa was angry V.C. had not told her sooner. According to V.C., Vanessa confronted Jovanni about the incident, and he denied it.

But then on February 11, 2021 V.C. met with a nurse examiner for a forensic interview and, prompted by the nurse to discuss things she had reported to the Department about Jovanni, V.C. said, "Mm. Well, I said a lie. A really big one." The nurse answered, "You told a lie?" V.C. said, "Yes. 'Cause I never wanted him to be with my mom, okay, 'cause I wanted her all for myself, and I got really jealous, and I said a lie, a big one to her, and I didn't want to." V.C. said that she lied about Jovanni "touching her," that he never rubbed her thighs or touched her breasts as she previously reported, and that "he didn't do none of that." Asked what she thought would happen as a result of her lying, V.C. said, "I don't know, but I didn't mean for all this to happen. I just don't like him at all. Well, not right now."

At the jurisdiction hearing, before sustaining the petition based on the allegations of sexual abuse, the juvenile court stated: "[S]ex abuse allegations are generally challenging because, unless there's forensic evidence that it occurred, it typically occurs without any witnesses. That is, the only percipient witnesses, if it occurred at all, are the alleged perpetrator and the victim. So the trier of fact, which in this case is me, is left to try to piece together what I can, based on a variety of, frankly, uncertain factors, which is trying to ascertain human motivation, the consistency or lack of consistency of

15

statements, when the accusations were made, the detail of the accusations, circumstances of the recantation, and so forth. Domestic violence and allegations of sexual abuse recantations are the rule and not the exception.  It doesn't happen in every case, but very, very common."

After the juvenile court sustained the petition and proceeded to disposition, counsel for Jovanni questioned the court's finding regarding the allegations of sexual abuse.  The court responded:  "As I said at the beginning, this is not— measure in credibility is not subject to scientific analysis, and you're right, you have to examine motivations and the circumstances, which is what I said at the beginning.  And I've done that to the best of my modest abilities." The court also stated:  "She [V.C.] made the allegations, she recanted.  I found that her allegations are credible . . . ."

Issues of fact and credibility, of course, are ""the province of the trial court.""  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  In reviewing factual determinations for substantial evidence, we cannot "'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.'" (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)  Here, the juvenile court considered a variety of factors and found V.C.'s report of sexual abuse by Jovanni more credible than her recantation of that report.  We are not free to substitute our view of the evidence.  (See *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329 ["[w]e may not substitute our assessment of the credibility of a witness in place of the credibility assessment of the trial court"].)  And taking the facts in V.C.'s report as true, they unquestionably constituted substantial evidence supporting the juvenile court's jurisdiction

finding under section 300, subdivision (d). Jovanni does not suggest otherwise.

Jovanni does argue that, in sustaining the allegations of sexual abuse, the juvenile court "improperly considered its personal opinion that, in almost every case, victims of sexual abuse recant their allegations," as reflected in the court's statement that "allegations of sexual abuse recantations are the rule and not the exception." A reasonable, contextualized reading of the court's comment about recantations, however, suggests the court's statement was essentially a parenthetical observation. The surrounding comments make clear the court understood it was required to make, and did make, a factual determination based on examining, among other things, the "motivations" and "circumstances" in this particular case.

4. *Jovanni's Remaining Challenges to the Jurisdiction Findings Based on Sexual Abuse Are Nonjusticiable*

Jovanni also challenges the jurisdiction findings based on sexual abuse under section 300, subdivisions (b)(1) and (j), and in the case of the latter adds some arguments to those raised in challenging the finding under section 300, subdivision (d). But because substantial evidence supported the juvenile court's jurisdiction finding under section 300, subdivision (d), based on the identical allegations of sexual abuse pleaded under section 300, subdivisions (b)(1) and (j), Jovanni's challenges to the sexual abuse counts sustained under subdivisions (b)(1) and (j) raise only """abstract or academic questions of law.""" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) Jovanni does not identify any relief we could provide that "would have a practical, tangible impact on

17

his position in the dependency proceeding" (*ibid.*), or elsewhere, were we to reverse the jurisdiction findings based on sexual abuse under section 300, subdivisions (b)(1) and (j), while affirming the finding under section 300, subdivision (d). Therefore, we dismiss Jovanni's appeal from the juvenile court's jurisdiction findings based on sexual abuse under section 300, subdivisions (b)(1) and (j), as nonjusticiable. (See *In re L.O.*, *supra*, 67 Cal.App.5th at p. 237 ["'An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.'"]; *In re I.A.*, at pp. 1490-1491, 1495 [same].)

C. *The Juvenile Court Did Not Err in Making Its Disposition Orders*

Jovanni contends that, "[i]f the jurisdictional findings as to [him] are reversed, then his disposition orders should be reversed, including the removal order, the counseling or rehabilitation program orders that correspond to the erroneous jurisdictional findings, and the order requiring that visitation be monitored." The only jurisdiction finding we are reversing, however, is the one under section 300, subdivision (a), and we are affirming the finding under section 300, subdivision (b)(1), based on identical allegations. Given this outcome of Jovanni's jurisdiction challenges, there is no basis for disturbing the juvenile court's disposition orders.

18

D.    *The Juvenile Court and the Department Failed To Comply with ICWA's Inquiry Requirements*

1.    *Applicable Law*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8; see *In re J.C.* (2022) 77 Cal.App.5th 70, 76; *In re T.G.* (2020) 58 Cal.App.5th 275, 287.) ICWA provides:  "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.'  [Citation.]  This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.*, at p. 5; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re J.C.*, at p. 76; *In re H.V.* (2022) 75 Cal.App.5th 433, 437.)[5]

---

[5]    "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); see § 224.1, subds. (a), (b).)

“““‘Federal regulations implementing ICWA . . . require that state courts “ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.” [Citation.]  The court must also “instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.”’”””  (*In re J.C., supra,* 77 Cal.App.5th at p. 77; see 25 C.F.R. § 23.107(a).)  California law ‘“more broadly imposes on social services agencies and juvenile courts (but not parents) an “affirmative and continuing duty to inquire” whether a child in the dependency proceeding “is or may be an Indian child.”’”  (*In re J.C.,* at p. 77; see § 224.2, subd. (a); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742.)

“Section 224.2 ‘“creates three distinct duties regarding ICWA in dependency proceedings.”’”  (*In re J.C., supra,* 77 Cal.App.5th at p. 77; see *In re H.V., supra,* 75 Cal.App.5th at p. 437; *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.)  “First, section 224.2, subdivision (b), requires the child protective agency to ask ‘the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.’”  (*In re J.C.,* at p. 77; see *In re H.V.,* at p. 437; Cal. Rules of Court, rule 5.481(a)(1).)  Although this duty is “commonly referred to as the ‘initial duty of inquiry,’ it ‘begins with the initial contact’ (§ 224.2, subd. (a)) and continues throughout the dependency proceedings.”  (*In re J.C.,* at p. 77.)

“Second, if the court or child protective agency ‘has reason to believe that an Indian child is involved in a proceeding, but

does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78; see § 224.2, subd. (e); *In re H.V.*, *supra*, 75 Cal.App.5th at p. 437; Cal. Rules of Court, rule 5.481(a)(4).) "Third, if the further inquiry ""results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply."'"" (*In re J.C.*, at p. 78; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re H.V.*, at p. 437.)

"""'The juvenile court must determine whether . . . ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'"" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78; see § 224.2, subd. (i)(2); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050; Cal. Rules of Court, rule 5.481(b)(3).) The court, however, may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence . . . ." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

2. *Analysis*

For the detention hearing, the Department reported Vanessa "denied any Native American ancestry," and the

Department filed a completed Judicial Council form ICWA-010(A), Indian Child Inquiry Attachment, for both J.F and V.F., indicating that an "Indian child inquiry" was "made" and that "[t]he child has no known Indian ancestry." Vanessa and Jovanni also each filed a completed Judicial Council form ICWA-020, Parental Notification of Indian Status. Vanessa's indicated she had "no Indian ancestry as far as I know," and Jovanni's indicated no statement on the form suggesting a child might be an Indian child applied to J.F. or V.F.[6] At the detention hearing, which Vanessa and Jovanni attended via videoconference, the juvenile court found that, based on its review of the "ICWA . . . filings by" Vanessa and Jovanni, the court had no reason to know J.F. or V.F. were Indian children. The court made no subsequent inquiry or findings relating to ICWA.

Jovanni contends that these proceedings failed to comply with the juvenile court's and the Department's duties of inquiry under ICWA and related California law and that therefore substantial evidence did not support the court's finding it had no reason to know J.F. or V.F. were Indian children. Specifically, he argues the court failed to comply with its duty because it did not (1) ask Vanessa and Jovanni at their first appearance (i.e., the detention hearing) or at any later hearing about their possible Indian ancestry or (2) instruct them to inform the court if they subsequently received information providing reason to know J.F. and V.F. were Indian children. Jovanni argues the Department failed to comply with its duty of inquiry because it did not ask Jovanni about his possible Indian ancestry or ask the children's

_____

[6] The difference in their answers is presumably attributable to their using different versions of this form, with Jovanni using the more recently revised (on March 25, 2020) form.

22

extended family members or others having an interest in the children, including a paternal aunt with whom the Department had contact, whether J.F. and V.F. were or may be Indian children.

The Department does not dispute it and the juvenile court failed to comply with their duties of inquiry under ICWA and California law in the ways identified by Jovanni. Instead, the Department argues in its respondent's brief that Jovanni's contentions regarding ICWA violations should be dismissed as moot—as should Jovanni's entire appeal—because the juvenile court terminated its jurisdiction over the children and Jovanni did not appeal from that ruling. In a supplemental letter brief, however, the Department has acknowledged it was mistaken in asserting Jovanni did not appeal from the order terminating jurisdiction. Thus, the Department concedes that this appeal— including, presumably, the portion asserting ICWA violations— "is not moot on that basis."

Which leaves Jovanni's ICWA contentions uncontested by the Department. We agree with Jovanni that the juvenile court and the Department did not comply with ICWA's inquiry requirements and that the juvenile court erred in finding it had no reason to know J.F. and V.F. were Indian children.

## DISPOSITION

The juvenile court's jurisdiction finding under section 300, subdivision (a), is reversed. The court's jurisdiction finding under section 300, subdivision (b)(1), based on Jovanni and Vanessa's history of domestic violence, its jurisdiction finding under section 300, subdivision (d), and its disposition orders are conditionally

23

affirmed.  Jovanni's appeal from the jurisdiction findings under section 300, subdivisions (b)(1) and (j), based on his sexual abuse, is dismissed as nonjusticiable.  The juvenile court is directed to ensure the Department complies fully with the inquiry and, if necessary, notice provisions of ICWA and related California law.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J