Filed 2/19/15; pub. order 3/13/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JONATHAN B. et al., Persons Coming Under the Juvenile Court Law. | B258513 |
| | (Los Angeles County Super. Ct. No. DK05369) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ANDREA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri S. Sobel, Juvenile Court Referee. Reversed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

Andrea S. (mother) appeals from the court's order sustaining jurisdiction over her three children: Jonathan B. (age 13), Richard S. (age 7), and Savannah S. (age 5). Mother contends that the jurisdictional findings sustained against her under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1), are unsupported by substantial evidence because she took the proper actions to protect her children when Richard S., Sr. (father) assaulted her on May 27, 2014. We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father were married in 2006. Jonathan was four at the time and his biological father was not involved in his life. Father raised Jonathan as his own child.[2] Jonathan was born in 2001, Richard was born in 2006, and Savannah in 2009. In 2009, father punched mother in the face once when they were arguing.

In July or August 2013, mother and father separated and father moved out of the family home. They continued to jointly care for the children; the children lived primarily with mother, and attended weekend visits with father. Mother and father "[got] along well in terms of communicating regarding the children."

On May 27, 2014, the children attended a party with father during a weekend visit with him. Father drank alcohol at the party. When mother picked up the children from the party she also agreed to give father a ride to his home ten minutes away.[3]

In the car, father became upset when he observed hickeys on mother's neck. He called her a " 'bitch' " and a " 'whore' " and pinched her on the neck. Mother asked father to stop because the children were in the car, and father responded " 'I don't care, they need to know what kind of mother they have.' " As the car was approaching father's home, he grabbed mother's sunglasses off her face and broke them.

---

[1]    All subsequent statutory references are to the Welfare and Institutions Code.

[2]    Jonathan's biological father is not a subject of this petition.

[3]    Father's destination was his mother's home where he was living at the time. We refer to this residence as his home for simplicity.

2

When they arrived at father's home, he went inside to retrieve the children's belongings. He then returned to the car and started taking items out of the trunk. Mother got out of the car "to see what father was doing" and he started "throwing" her belongings. When mother attempted to retrieve her things, father grabbed mother's purse from the passenger seat and threw its contents in the street.

Mother told father to stop and said she was going to call the police. He then punched her in the face and slapped her. Mother got into the car and drove off. The children were crying and upset. Mother drove straight to the police station where the police issued an emergency restraining order protecting her and the children from father.

On June 5, 2014, the Department of Children and Family Services (Department) filed a petition alleging that the children were endangered under section 300, subdivisions (a) and (b)(1), based on father's violent conduct and mother's failure to protect the children "by allowing [] father to frequent the children's home and have unlimited access to the children." The juvenile court detained the children from father and ordered that he have unmonitored day visits with the children.

The jurisdiction and disposition hearing was held two months later on August 5, 2014. Father pled no contest. Mother's counsel argued that mother should be stricken from the petition because, after the May 27, 2014 incident, mother immediately reported the incident to the police. Counsel further argued that, given that the only other incident of domestic violence had occurred five years prior, "there[] [was] no way that [mother] could have known that [] father would have reacted in such a manner on this day in question." The children's counsel joined in mother's argument that mother "did call the police" and "there was nothing [mother] could have done to prevent" the assault.

The court sustained the petition, ordered that the children remain with mother, and continued father's unmonitored visits with them. Mother timely appealed.

3

## DISCUSSION

1. *Applicable Law*

Mother contends that the jurisdictional findings against her under section 300, subdivisions (a) and (b)(1), are not supported by substantial evidence. Subdivision (a) provides for jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted *nonaccidentally* upon the child by the child's parent or guardian. . . . [A] court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent . . . which indicate the child is at risk of serious physical harm." (§ 300, subd. (a) (emphasis added.))

Subdivision (b)(1) provides for jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the *failure or inability* of his or her parent or guardian to adequately supervise or protect the child . . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from the risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1), (emphasis added.).)

"A juvenile court may order children to be dependents thereof if the Department establishes by a preponderance of the evidence that allegations made pursuant to section 300 are true." (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) We review the jurisdictional findings for substantial evidence and will affirm if "there is reasonable, credible evidence of solid value to support them. [Citations.]" (*Id.* at p. 1319.)

2. *The Merits of Mother's Appeal Should Be Addressed*

Mother appeals only from the juvenile court's findings against her. The juvenile court also has a basis for jurisdiction over the children pursuant to the sustained counts against father. Accordingly, the Department argues that the appeal is moot on the ground that "[a]s long as there is one unassailable jurisdictional finding, it is immaterial

4

that another might be inappropriate. [Citations.]" (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [juvenile] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) However, we may also exercise our discretion to reach the merits of a challenge to any jurisdictional finding when the finding may be prejudicial to the appellant. (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.) Because the finding that mother intentionally hurt and neglected her children may be used against mother in future dependency proceedings, we reach the merits of mother's appeal.

3. *The Jurisdictional Findings Against Mother Were Not Supported by Substantial Evidence*

The evidence presented by the Department was not sufficient to support a jurisdictional finding against mother under either subdivision (a) or (b)(1) of section 300. There was no evidence the children had suffered "serious physical harm," therefore, the Department was required to show that the children were at "substantial *risk*" of "suffer[ing] serious physical harm" inflicted nonaccidentally by mother (subdivision (a)) or caused by mother's failure to protect them (subdivision (b)(1).)

First, the evidence did not show that mother would nonaccidentally expose the children to father's violent conduct. At the time of the incident on May 27, 2014, mother and father had been living apart for approximately ten months. There was no evidence they had had any contact other than when they exchanged custody of the children, and the record shows they had been getting "along well in terms of communicating regarding the children" until the incident on May 27, 2014. As for the incident, father hit mother after she had been waiting for him to retrieve the children's belongings from his home. That mother failed to foresee that father would punch and

5

slap her at that time was not unreasonable; the only other time father had assaulted mother was five years prior when they were living together.

Second, the evidence did not show that mother would fail to protect the children from father's violent conduct. In fact, on May 27, 2014, mother took the proper actions immediately after father attacked her. She went straight to the police station, reported the assault, and obtained a restraining order protecting herself and the children from father. Although mother did not report the first incident of domestic violence that occurred five years before, that assault was too distant in time to show that mother would, at the time of the jurisdiction hearing, choose not to address an assault by father. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 [holding that evidence the father had assaulted the mother "at least two, and probably seven, years before the [Department] filed the petition" was insufficient "to support a finding that . . . domestic violence between the parents placed the children at a current substantial risk of physical harm"].)

The Department argues that the facts here are similar to those in *In re Giovanni F.* (2010) 184 Cal.App.4th 594, and that the court may uphold "a jurisdictional finding under section 300, subdivision (a), in a situation like this one where the father physically abused the mother while she and the child were in a car with the father." In *Giovanni F.,* the father had been violent with the mother "throughout their two-and-one-half-year relationship." (*Giovanni F., supra,* 184 Cal.App.4th at p. 599.) Although the parents signed a "safety plan" with the Department and agreed to live separately, the mother continued to live with the father without telling the Department. (*Ibid.*)

The police were alerted to the father's physical abuse one day when the father assaulted the mother in the car; while he was driving, he punched the mother "several times in the face [] and strangled her with his right hand until she lost consciousness." (*Id.* at p. 600.) The parents' one-year-old child was in the back seat during the attack, and, after the father parked the car (and the mother regained consciousness), the parents "physically struggled over [the child's] car seat while [the child] was in it," breaking

a window by crashing the car seat into it. (*Ibid*.) The juvenile court in *Giovanni F.* found there was a substantial risk the child would suffer serious physical harm inflicted nonaccidentally by the parents under section 300, subdivision (a).

The present case is distinguishable from *Giovanni F.* In *Giovanni F.,* the father's violent conduct was entirely foreseeable: he had been consistently violent with the mother for years. Here, it was not unreasonable for mother to wait for father while he was retrieving the children's belongings from his home. Although father had pinched her and verbally abused her in the car, they had otherwise been "getting along" when they exchanged custody, and the only prior incident of physical violence had occurred five years before. In addition, the mother in *Giovanni F.* took actions that endangered the child. Even after the mother promised the Department that she would live separately from the father, she continued to live with him. The mother also engaged in a violent tussle over the car seat while the child was sitting in it. In this case, mother did not knowingly expose the children to a pattern of domestic violence or actively fight with father.

Furthermore, unlike in *Giovanni F.* where a substantial risk of serious physical harm to the children could be based on the mother's unwillingness to separate from the father, here, at the time of the jurisdiction hearing, mother had lived separately from father for a year and their contact was limited to exchanging custody of the children. Although the petition alleged that mother "allow[ed] father to frequent the children's home," there was no evidence that father still visited the children at mother's home.

On these grounds, there was no substantial evidence that the children were at "substantial *risk*" of "suffer[ing] serious physical harm" inflicted nonaccidentally by mother or through her failure to protect them. We conclude by noting that a sustained jurisdictional finding against mother would, in effect, penalize her for having brought the incident to the authorities' attention when, in fact, this is the kind of response that should be encouraged.

7

## *DISPOSITION*

The judgment is reversed with respect to the findings against mother.

LAVIN, J.[*]

WE CONCUR:

EDMON, P. J.

KITCHING, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/13/15

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JONATHAN B. et al., Persons Coming Under the Juvenile Court Law. | B258513 |
| | (Los Angeles County Super. Ct. No. DK05369) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | [NO CHANGE IN JUDGMENT] |
| ANDREA S., | |
| Defendant and Appellant. | |

BY THE COURT:

The opinion in the above-entitled matter filed on February 19, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the judgment.]