Filed 3/8/22  In re Samantha S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re SAMANTHA S. et al., Persons Coming Under the Juvenile Court Law. | B312095 (Los Angeles County  Super. Ct. No. 20CCJP05418) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ERICA P.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Erica P. (mother) appeals jurisdictional findings that her children Samantha S. (born June 2008), Sharlene S. (born May 2010), and Juan S. (born Oct. 2017) are dependents of the court. Mother contends there is insufficient evidence to support the juvenile court's findings that she failed to protect the children and has a history of drug abuse that places the children at risk of harm.[1]  We conclude that substantial evidence supports the jurisdictional findings, and affirm the orders as to all three children.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second petition under Welfare and Institutions Code section 300[2] that the Los Angeles Department of Children and Family Services (DCFS) has filed on behalf of mother's children.  The first petition, filed in June 2014, alleged that mother and father had a history of engaging in violent altercations in front of the children, resulting in father's convictions in 2011 and 2012 for spousal battery and inflicting corporal injury.  Also, mother had a history of abusing marijuana and was a current abuser of methamphetamine.  Father was

---

[1]  Mother has also appealed from disposition orders removing the children from her custody.  After mother filed her appeal, the juvenile court terminated the removal orders and issued new orders placing the children home of mother.  We take judicial notice of these orders (Evid. Code, §§ 452, subd. (d), 455, subd. (a)), and dismiss as moot this portion of mother's appeal. (See *In re N.S.* (2016) 245 Cal.App.4th 53, 58–59; *In re E.T.* (2013) 217 Cal.App.4th 426, 436.)

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

a current abuser of marijuana. On October 10, 2014, the court sustained the first petition, removed Samantha and Sharlene from parental custody, and ordered reunification services that included individual counseling, domestic abuse counseling, drug counseling, and random drug testing for both parents. The children were returned to mother's custody in April 2015, and in August 2015, the court terminated jurisdiction with a family law order providing mother sole legal and physical custody of the children. The order also provided that father could visit the children with an independent monitor outside of the family home.

On September 12, 2020, deputies from the Los Angeles County Sheriff's Department (LASD) responded to maternal grandmother's home on a family disturbance call. A DCFS detention report and LASD incident report described the following.

Around July 2020, mother moved the children from Hesperia to live with maternal grandmother and maternal aunts in Los Angeles. While in Hesperia between 2017 and 2020, mother and the children lived "on and off" with father. When mother moved the children to Los Angeles, father followed them.

Around 7:30 a.m. on September 12, 2020, father broke into mother's car, which was parked at maternal grandmother's home. According to mother, father had been using methamphetamine for the last year and a half, and had broken into her car to sleep and to do

drugs.[3]  Several hours later, father began cursing at a maternal aunt (Ana P.), and threw lemons at maternal grandmother's home.  To calm him down, Samantha walked outside and began speaking with father. Father became enraged and abruptly lunged forward, grabbed Samantha, and bit down on the child's shoulder.  Samantha screamed and pulled away from father.  Before the police arrived, father ran off the property and out of view.  According to mother's nephew, Jaime, father "looked high that day."[4]

Father returned to maternal grandmother's home around 3:00 a.m. the following morning to sleep under mother's car.  Maternal uncle, Luis P., called the police, and father was ordered to leave the property.  Luis P. reported that around April 2020, while father was "high on drugs" inside maternal grandmother's home, father exposed his genitals to maternal grandmother.

A social worker interviewed the family on September 18, 2020. Sharlene reported that she was afraid of father.[5]  Mother reported that she did not use drugs or alcohol, and denied that there was an existing

---

[3]    Mother reported that father was homeless but often seen at paternal aunt and uncle's home.  Paternal aunt and uncle lived across the street from maternal grandmother's home.

[4]    In the past, Jaime had seen father use drugs with his friends outside, and "even offered [Jaime] drugs like cocaine and marijuana."

[5]    Samantha reported that she was not fearful of father.  Due to his young age, Juan was unable to provide a statement to social workers.

family law order in place. Mother planned to obtain a restraining order against father, and agreed to take a drug test.

Mother's drug test taken September 23, 2020, was positive for methamphetamine, and negative for all other substances. When she received the results the following week, mother "adamantly denied" using methamphetamine, and stated that "perhaps she was positive because father [had] 'entered her.'" Mother tested negative for all substances the following day.

In a follow-up interview on October 6, 2020, mother admitted she had used methamphetamine to grieve the death of her father and cope with the recent incident between father and Samantha. When advised to look for a substance abuse program and therapy, mother affirmed she would look through a referral packet provided by DCFS. Mother agreed to move out of maternal grandmother's home so the children could stay in the care of maternal aunts, Ana P. and Maria P.

On October 8, 2020, a social worker contacted father across the street from maternal grandmother's home. Father smelled of alcohol and was drinking a can of beer. He refused to drug test and stated that "no matter what he would wait for mother to take him back."

DCFS filed a 10-count dependency petition on October 13, 2020. The counts alleged different legal theories (§ 300, subds. (a), (b)(1), (j)), under the same facts, namely father's physical abuse of Samantha; the failure of mother to protect the children by allowing father, with whom mother had a history of engaging in violent altercations, to reside in the home with the children; mother's current use and history of abusing methamphetamine and marijuana; and father's abuse of

methamphetamine, marijuana, and alcohol. The petition also alleged that Samantha and Sharlene were prior dependents of the court. The court detained the children and ordered them released to Ana P. and Maria P. The court ordered individual counseling for the children, monitored visitation for mother and father, and reunification services and drug testing for mother.

A combined jurisdiction/disposition hearing was conducted on April 14, 2021. DCFS reported that due to placement issues with Ana and Maria P., mother and DCFS agreed to place the children under the care of Theresa C., mother's friend.

When interviewed in December 2020 and January 2021, Samantha and Sharlene stated that as far back as they could remember, father had hit mother in their presence. Mother reported that she reconciled with father at the end of 2016. Following the birth of their third child, Juan, father moved in with the family for "a 'new start.'" Around May 2020, mother used methamphetamine "'a lot,'" and in June 2020, father scratched mother and hit her with a cell phone cord in front of Sharlene. In July 2020, mother moved the children to Los Angeles after she had been pushed by father.

In DCFS's assessment, mother was doing well and accepted responsibility for her past behavior. Despite attending domestic violence counseling in a "somewhat inconsistent" manner, mother attended individual therapy, tested negatively for all drugs, secured a full-time job, and was on track to complete her substance abuse and domestic violence programs by the end of April 2021. At that point in time, DCFS indicated it would liberalize mother's visitation. Father

6

refused to participate in programs, and failed to maintain any contact with the children.

Mother and Theresa C. appeared for the joint jurisdiction and disposition hearing. The court admitted DCFS's reports into evidence and heard argument from the parties. Mother's counsel requested that the court dismiss the entire dependency petition, as there was no "nexus between these historical events and the current state" of mother's situation. Minors' counsel argued that given mother's progress in drug treatment, her substance abuse did not pose a current risk to the children. Minor's counsel submitted as to the remaining allegations.

The court sustained the petition as alleged.[6] The court noted that mother's participation in the prior dependency case was based on the very same issues giving rise to the current case (i.e., drug abuse and domestic violence). Despite completing programs in 2014 and 2015 to alleviate these concerns, mother subsequently reconciled with her abuser (father) and began using methamphetamine in May 2020. The court commended mother for "everything that you've done. I think you are on the right path. But . . . I do think that we need to see a longer record of both sobriety and consistent and committed efforts to stay away from father in every way" prior to terminating the case.

---

[6] The court struck a separate count (b-5) in which the children were alleged to be at risk of harm based on mother's mental and emotional problems.

Proceeding to disposition, the court granted mother's request to move into the home of Theresa C. where the children were living. In doing so, the court clarified that the children remained "legally under the custody and supervision of the caregiver."

Mother filed a notice of appeal from the jurisdiction and disposition orders on April 14, 2021. During an October 2021 review hearing, the court noted that mother had made "substantial" progress toward alleviating or mitigating the causes necessitating the children's placement. The court terminated its disposition order and ordered the children returned to home of mother.

## DISCUSSION

1. *Justiciability*

We first consider whether mother's appeal is properly before us. It is undisputed that the children remain under the court's jurisdiction based on father's conduct. "[A] jurisdictional finding good against one parent is good against both," because dependency jurisdiction attaches to the child, not the parents. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) The general rule is that a single jurisdictional finding supported by substantial evidence is sufficient to support the juvenile court's jurisdiction and render moot a challenge to any other finding. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*).)

We nonetheless retain discretion to consider the merits of a parent's appeal if the jurisdictional finding at issue "(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially

8

impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763; see, e.g., *M.W.*, *supra*, 238 Cal.App.4th at p. 1452; *In re Christopher M.* (2014) 228 Cal.App.4th 1310, 1316–1317.) Because the jurisdictional findings against mother could have consequences for her in future proceedings, we exercise our discretion to review her claims. (*M.W.*, *supra*, at p. 1452.)

2.      *Jurisdictional Findings*

Mother's asserts there is insufficient evidence to support the juvenile court's findings that her past use of methamphetamine posed a current risk to the children, or that she failed to protect the children from father's conduct. We disagree.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 184.) We must uphold the court's findings "'unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.]'" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

As relevant to mother's appeal, the sustained petition alleged under section 300, subdivisions (a), (b)(1), and (j) that mother and father have a history of engaging in violent altercations in the children's presence, that mother failed to protect the children by allowing father to

9

live in the home with unlimited access to the children, and that mother's history of abusing methamphetamine placed the children at risk of serious physical harm. The record supports these jurisdictional findings.

Regarding domestic violence, it is undisputed that mother and father have a lengthy history of domestic violence. Between 2011 and 2014, father was arrested and convicted of spousal abuse and corporal injury on a spouse. The first dependency petition was sustained in 2014 with findings that mother and father engaged in violent altercations in front of Samantha and Sharlene. After mother completed court-ordered parenting classes, domestic violence treatment, and therapy, the court terminated jurisdiction in August 2015 with a family law order prohibiting father from having unmonitored visitation with the children inside the family home.

In violation of that order, mother reconciled with father in 2016, conceived a third child (Juan) with father, and lived with him for approximately four years. During that period of time, father physically abused mother in the presence of the children. And while mother relocated the children to Los Angeles, father was still able to have contact with the children in and around maternal grandmother's home. Father's erratic and violent behavior culminated in September 2020 when he bit Samantha outside of maternal grandmother's home.

The foregoing amply supports a finding that mother and father continued to engage in a cycle of violence placing the children at substantial risk of suffering serious physical harm inflicted nonaccidentally (§ 300, subd. (a)), or as a result of mother's failure to

10

protect the children from father (§ 300, subd. (b)(1)).  (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["a 'cycle of violence between . . . parents constitute[s] a failure to protect [a child] "from the substantial risk of encountering the violence and suffering serious physical harm or illness from it"'"]; see *In re Laura F.* (1983) 33 Cal.3d 826, 833 ["a measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child"].)

The cases on which mother rely, *In re Ma.V.* (2021) 64 Cal.App.5th 11 (*Ma.V.*), and *Jonathan B.* (2015) 235 Cal.App.4th 115 (*Jonathan B.*), are distinguishable.  Unlike those cases, the primary concern in this case was not just mother's past abuse by father, but her decision to reconcile and permit father access to the children despite an extensive history of domestic abuse in the children's presence.  (Compare *Ma.V.*, *supra*, at pp. 14–15, 23–24 [following two isolated incidents of domestic violence, mother ended relationship with boyfriend, left the family home, and did not engage in a new romantic relationship]; *Jonathan B.*, *supra*, at pp. 117, 119–120 [two isolated incidents of domestic violence were separated by five years].)  Nor did *Ma.V.* or *Jonathan B.* involve a pre-existing family law order prohibiting unmonitored visitation by an abusive parent, or more critically, the infliction of harm by that parent on a child.  (Compare *Ma.V.*, *supra*, at p. 14; *Jonathan B.*, *supra*, at p. 120.)

We also conclude that the record supports the jurisdictional finding that mother's issues with substance abuse impaired her ability to appropriately care for and supervise the children.  Despite

11

completing court-ordered drug counseling for methamphetamine abuse in 2014 and 2015 and remaining drug free for several years, in May 2020 mother relapsed and used methamphetamine "'a lot'" that month, testing positive for methamphetamine September 23, 2020. During that period of time, mother and the children lived on-and-off with father, who exhibited violent and erratic behavior around the children. Also during that time, father assaulted Samantha while appearing to be under the influence of drugs. When initially confronted with her own drug use, mother was not forthcoming with DCFS. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [denial is a relevant factor in determining whether a person is likely to modify his or her behavior in the future without court supervision].)

The foregoing supports the finding that at the time of the jurisdiction hearing, mother's issue with substance abuse posed a current risk to the children's safety if placed in her care. (See *In re J.C.* (2014) 233 Cal.App.4th 1, 7 [because father's children had previously been removed based on his history of drug abuse, "his seven months of sobriety did not mean that he was no longer at risk of relapsing"]; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384–1385 [mother's history of illicit drug use had led to the removal of her older children, and placed her infant at substantial risk of harm even though the child had not yet been harmed]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [substance abuse by a parent of a child under six years of age is prima

facie evidence of the parent's inability to provide regular care resulting in a substantial risk of harm].)[7]


## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


CURREY, J.


MICON, J.*

---

[7] The fact that Samantha was injured during the time mother was abusing methamphetamine readily distinguishes this case from those relied on by mother. (See *In re J.A.* (2020) 47 Cal.App.5th 1036, 1049 [no evidence that mother's child sustained an injury or detrimental medical condition during time mother used illicit drugs]; *In re L.W.* (2019) 32 Cal.App.5th 840, 850 [same]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727 [same].)

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.