Filed 10/10/23  In re J.F. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re J.F. et al., Persons Coming Under the Juvenile Court Law. | B319628 |
| | (Los Angeles County Super. Ct. No. 21CCJP00714) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOVANNI F., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Ashley Price, Juvenile Court Referee.  Reversed in part with directions and dismissed in part.

Jane B. Winer, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Jovanni F., father of six-year-old J.F. and five-year-old V.F., appeals from the juvenile court's jurisdiction findings and disposition orders declaring J.F. and V.F. dependent children of the court under Welfare and Institutions Code section 300, subdivisions (a), (b), (d), and (j),[1] and removing them from Jovanni.[2]  Jovanni challenges two of the court's jurisdiction findings: one under section 300, subdivision (a), based on his history of domestic altercations with the children's mother, and the other under section 300, subdivision (b), based on his sexual

_____

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    As we explain, shortly before making these findings and orders the juvenile court terminated an earlier assertion of jurisdiction over J.F. and V.F. with custody and visitation orders that, among other things, granted sole physical custody to the children's mother.  Jovanni appealed from those orders concurrently with his appeal from the jurisdiction findings and disposition orders.  However, because Jovanni's briefs do not challenge the court's order terminating jurisdiction or the custody and visitation orders, he has abandoned his appeal from those orders.  (See *In re M.B.* (2022) 80 Cal.App.5th 617, 620, fn. 1.)

abuse of J.F. and V.F's older sibling, V.C. Jovanni also contends the Los Angeles County Department of Children and Family Services failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.

We conclude Jovanni's appeal from the jurisdiction findings is moot, but we exercise our discretion to review the finding under section 300, subdivision (a), and conclude substantial evidence did not support that finding. We do not exercise our discretion to review the appeal from the finding under section 300, subdivision (b). The Department concedes and we agree it did not comply with ICWA's inquiry requirements. Therefore, we reverse the jurisdiction finding under section 300, subdivision (a), and direct the juvenile court to ensure the Department complies fully with the inquiry and, if necessary, notice provisions of ICWA and related California law. We dismiss the rest of Jovanni's appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Juvenile Court Sustains an Earlier Petition and Removes the Children; We Reverse in Part, Conditionally Affirm in Part, and Dismiss in Part*

"Jovanni and his girlfriend, Vanessa R., were living with their children, J.F. and V.F., and Vanessa's 13-year-old daughter (by another father), V.C., when in February 2021 the Department filed a section 300 petition alleging juvenile court jurisdiction

3

over J.F. and V.F.[3]  In identical counts pleaded under section 300, subdivisions (a) and (b), the Department alleged Jovanni and Vanessa had 'a history of engaging in physical and verbal altercations in the presence of the children.'  More specifically, the Department alleged:  On one occasion, Vanessa pushed Jovanni in the presence of V.C.; on another occasion, Vanessa pulled Jovanni's beard; on another occasion, Vanessa elbowed Jovanni in the mouth, bruising his lip; in V.C.'s presence Jovanni threatened to take the children from Vanessa; on multiple occasions law enforcement responded to Jovanni and Vanessa's home because of altercations; and these physical and verbal altercations between Jovanni and Vanessa endangered the children's physical health and safety, placing them at risk of serious physical harm." (*In re Vanessa C.* (Jun. 29, 2022, B312468) [nonpub. opn.], original fn. omitted.)

"In addition, in identical counts pleaded under section 300, subdivisions (b), (d), and (j), the Department alleged Jovanni 'sexually abused' V.C.  More specifically, the Department alleged that on one occasion Jovanni entered V.C.'s bedroom and rubbed her inner thigh area above the knee with his hand; while continuing to rub her thigh, he moved his hand toward her waist; and he then placed his fingers inside her pants, while she repeatedly told him to stop.  The Department also alleged that on another occasion Jovanni fondled V.C.'s breasts while she lay in her bed and that on still another occasion he 'demonstrated putting a condom on a cucumber' for V.C.  The Department alleged Vanessa knew of these instances of sexual abuse, failed to

---

[3]     The Department also alleged juvenile court jurisdiction over V.C., but that was not relevant to Jovanni's earlier appeal in this case, and it isn't relevant to this one.

take action to protect V.C., and allowed Jovanni unlimited access to V.C. and her siblings. The Department further alleged Jovanni's sexual abuse of V.C. and Vanessa's failure to protect V.C. endangered V.C.'s physical health and safety and placed her and her siblings at risk of serious physical harm." (*In re Vanessa C.*, *supra*, B312468.)

"At a jurisdiction hearing in April 2021, the juvenile court sustained all five counts. At disposition the court declared J.F. and V.F. dependent children of the court, removed them from their father, and released them to Vanessa. The court ordered Jovanni to participate in counseling programs for domestic violence, parenting, and sexual abuse and ordered him to have monitored visits with J.F. and V.F. and no visits with V.C. (though the court gave the Department 'discretion to liberalize' his visits (actually, lack of visits) with V.C.)." (*In re Vanessa C.*, *supra*, B312468, fn. omitted.)

Jovanni appealed from the jurisdiction findings and disposition orders. The Department argued Jovanni's appeal from the jurisdiction findings was nonjusticiable because he contested only those findings relating to his conduct and not those relating to Vanessa's. We rejected that argument, concluding that at least some of the jurisdiction challenges were justiciable because they contested findings that served as bases for the juvenile court's disposition orders. We held substantial evidence supported the jurisdiction finding under section 300, subdivision (b), based on Jovanni and Vanessa's history of domestic violence, but did not support the jurisdiction finding based on that conduct under section 300, subdivision (a), because there was no evidence of any nonaccidental injury to the

5

children.[4]  We also concluded that, although there was evidence V.C. recanted allegations Jovanni sexually abused her, the juvenile court credited V.C.'s initial allegations over her recantation—a determination we were not free to reevaluate— and that therefore substantial evidence supported the jurisdiction finding under section 300, subdivision (d), based on Jovanni's sexual abuse.  We determined Jovanni's appeal from the other jurisdiction findings based on his sexual abuse (under section 300, subdivisions (b) and (j)) was nonjusticiable because he could not identify any relief we could provide by reversing those findings while affirming the finding under section 300, subdivision (d).  (*In re Vanessa C.*, *supra*, B312468.)

So, we reversed the juvenile court's jurisdiction finding under section 300, subdivision (a); affirmed the jurisdiction finding under section 300, subdivision (b), based on Jovanni and Vanessa's domestic violence; affirmed the finding under section 300, subdivision (d), based on Jovanni's sexual abuse; and dismissed Jovanni's appeal from the jurisdiction findings under section 300, subdivisions (b) and (j), based on his sexual abuse. We also affirmed the disposition orders.[5]  (*In re Vanessa C.*, *supra*, B312468.)

---

[4]  Section 300, subdivision (a), "provides for jurisdiction when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted *nonaccidentally* upon the child by the child's parent or guardian . . . .'" (*In re Jonathan B.* (2015) 235 Cal.App.4th 115, 118.)

[5]  Because the juvenile court and the Department had not complied with ICWA's inquiry requirements, we conditioned the affirmances on compliance with our direction that the juvenile

B.    *The Juvenile Court Terminates Its Jurisdiction,*
      *Sustains Another Petition, and Removes the Children;*
      *Jovanni Appeals Again*

In the meantime, while that appeal was pending, the juvenile court held a six-month review hearing under section 364 and found the conditions justifying its initial assumption of jurisdiction over J.F. and V.F. no longer existed and were not likely to exist if the court withdrew its supervision and terminated its jurisdiction.  In February 2022 the court terminated its jurisdiction and issued custody and visitation orders providing for joint legal custody of J.F. and V.F. by Jovanni and Vanessa, sole physical custody of the children by Vanessa, and monitored visits between Jovanni and the children.

Two days later V.C. found Vanessa sitting in bed with a knife, saying she did not want to live anymore.  V.C. took J.F. and V.F. back to her bedroom, locked the door, and called Jovanni and the police.  Vanessa was ultimately taken to a hospital, where she was placed on a 72-hour hold under section 5150.

Two weeks later, having again detained J.F. and V.F., the Department filed a new petition alleging juvenile court jurisdiction over the children under section 300, subdivisions (a), (b), (d), and (j).[6]  In almost identical counts pleaded under section 300, subdivisions (a) and (b), the Department repeated

_____

court ensure the Department comply fully with the inquiry and, if necessary, notice provisions of ICWA and related California law. (*In re Vanessa C.*, *supra*, B312468.)

[6]    Again, the Department also alleged juvenile court jurisdiction over V.C. based on the counts alleged under section 300, subdivisions (a), (b), and (d).

7

the domestic violence allegations it made under those same subdivisions in the previous petition, adding that Jovanni had not consistently participated in or completed a court-ordered "Domestic Violence program for Batterers" or court-ordered "counseling to address child safety." In identical counts under section 300, subdivisions (b), (d), and (j), the Department repeated the sexual abuse allegations it made under those subdivisions in the previous petition, adding that Jovanni had not consistently participated in or completed various court-ordered programs, including sexual abuse counseling for perpetrators, and that over the last several months he had contact with V.C., J.F., and V.F. that violated juvenile court orders.

At a combined jurisdiction and disposition hearing in March 2022, the juvenile court sustained the new section 300 petition as pleaded, declared J.F. and V.F. dependent children of the court, and removed them from Vanessa and Jovanni. Jovanni timely appealed.

## DISCUSSION

A. *Jovanni's Challenges to the Jurisdiction Findings Are Moot, But We Exercise Our Discretion To Reverse the Finding Under Section 300, Subdivision (a)*

The "principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation], means that "'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'" [citation]. Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot. [Citation.] The same is true where there are multiple findings against one parent; the validity of one finding may render moot the parent's attempt to challenge the others." (*In re D.P.* (2023) 14 Cal.5th 266, 283-284.)

Even so, if a parent challenges only one or some of multiple jurisdiction findings, the challenge may not be moot where the parent demonstrates "a specific legal or practical consequence that would be avoided upon reversal" of the challenged finding(s). (*In re D.P., supra,* 14 Cal.5th at p. 283; see *id.* at p. 277 ["a case is not moot where a court can provide the plaintiff with 'effect[ive] relief,' and in "this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status'"].) Thus, for example, a parent's challenge to only one of multiple jurisdiction findings may not be moot where the challenged finding "'serves as the basis for dispositional orders that are also challenged on appeal.'" (*Id.* at p. 283.)

Here, the juvenile court made jurisdiction findings against both parents, and only Jovanni has appealed. Moreover, he challenges only the findings against him under section 300,

9

subdivision (a), based on his and Vanessa's domestic violence, and section 300, subdivision (b), based on his sexual abuse of V.C.—*not* the finding against him under section 300, subdivision (b), based on his and Vanessa's domestic violence or those under section 300, subdivisions (d) and (j), based on his sexual abuse of V.C.[7]

Nor has Jovanni identified any specific legal or practical consequence that reversing the findings he challenges would avoid. In fact, he has withdrawn any challenge to the juvenile court's disposition orders and concedes he "does not challenge the underlying facts or the finding that [he] sexually abused V.C." Therefore, Jovanni's appeal from the jurisdiction findings under section 300, subdivision (a), and under section 300, subdivision (b), based on his sexual abuse of V.C. is moot.

"Even when a case is moot," however, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.) "As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.'" (*Ibid.*) Outside these circumstances, courts reviewing rulings in dependency proceedings may "properly consider[ ] a variety of factors" (*id.* at p. 285), including that a dismissal for mootness may have "''the undesirable result of insulating erroneous or arbitrary rulings from review''" (*ibid*). (See *id.* at p. 287 [in dependency proceedings reviewing courts

---

[7]     After initially challenging the jurisdiction findings under section 300, subdivisions (d) and (j), in his opening brief, Jovanni withdrew those challenges in his reply brief.

"must decide on a case-by-case basis whether it is appropriate to exercise discretionary review to reach the merits of a moot appeal, keeping in mind [various] broad principles and nonexhaustive factors"].)

It is appropriate to exercise our discretion to reach the merits of Jovanni's appeal from the jurisdiction finding under section 300, subdivision (a), because dismissing it for mootness would insulate a patently erroneous ruling—indeed, one that ignores our decision in the prior appeal—from review. As discussed, in our previous decision we reversed the juvenile court's earlier jurisdiction finding under section 300, subdivision (a), for lack of substantial evidence because there was no evidence any of the children suffered nonaccidental injury. And as the Department acknowledges, "virtually all the factual assertions" in the jurisdiction findings Jovanni challenges "are identical to the factual assertions from the children's prior dependency petition." The Department also concedes "there is no new evidence to support nonaccidental injury to a child." The juvenile court thus erred (again) in finding it had jurisdiction over the children under section 300, subdivision (a).

In contrast, there is no reason—and Jovanni offers none—to exercise our discretion to reach the merits of Jovanni's challenge to the jurisdiction finding under section 300, subdivision (b), based on his sexual abuse of V.C., particularly because he does not challenge two other jurisdiction findings based on identical facts (or even dispute those facts). Therefore, we dismiss the appeal from that finding as moot.

B.    *The Department and the Juvenile Court Failed To Comply with ICWA's Inquiry Requirements*

11

Congress enacted ICWA in 1978 "out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies.' [Citation.]  Congress found that many of these children were being 'placed in non-Indian foster and adoptive homes and institutions,' and that the States had contributed to the problem by 'fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.' [Citation.]  This harmed not only Indian parents and children, but also Indian tribes.  As Congress put it, 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children.'" (*Haaland v. Brackeen* (2023) 599 U.S. ___, 143 S.Ct. 1609, 1623.)  ICWA "thus aims to keep Indian children connected to Indian families." (*Id.* at p. __; 143 S.Ct. at p. 1625.)

"ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq.) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316), including asking "each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*In re E.C.* (2022) 85 Cal.App.5th 123, 140; see 25 C.F.R. § 23.107(a); *In re J.C.* (2022) 77 Cal.App.5th 70, 77.)  California law "'more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."'" (*J.C.*, at p. 77; see § 224.2, subd. (a); *In re A.R.* (2022) 77 Cal.App.5th 197, 237.)

"[S]ection 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; see *In re H.V.* (2022) 75 Cal.App.5th 433, 437; Cal. Rules of Court, rule 5.481(a)(1).) Although this duty is "commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*J.C.*, at p. 77; see *Haaland v. Brackeen*, *supra*, 599 U.S. at p. __; 143 S.Ct. at p. 1623 [when a state court adjudicates a foster care or adoption proceeding, "ICWA governs from start to finish"]; *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 319.) In addition, the "'juvenile court "has a responsibility to ascertain that [the child protective agency] has conducted an adequate investigation"' [citation], and must determine whether ICWA applies to the child's proceedings." (*In re G.H.* (2022) 84 Cal.App.5th 15, 31; see § 224.2, subd. (i)(2); *J.C.*, at p. 78; Cal. Rules of Court, rule 5.481(b)(3).) The court may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

Jovanni contends, the Department concedes, and we agree the Department and the juvenile court failed to comply with ICWA's inquiry requirements. At the detention hearing on the current petition, the juvenile court found it had no reason to

know J.F. or V.F. was an Indian child, the only ICWA finding it appears to have made before adjudicating the petition and removing the children. The Department acknowledges, however, it did not ask the various members of the children's extended family about possible Indian ancestry, including paternal aunts Raquel M., Denise F., and Jannel L.; the children's paternal grandmother; and the children's maternal grandparents. Therefore, we direct the juvenile court to ensure the Department conducts a proper inquiry under ICWA and related California law. (See *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 326.)

## DISPOSITION

The juvenile court's jurisdiction finding under section 300, subdivision (a), is reversed.  The juvenile court is directed to ensure the Department complies fully with the inquiry and, if necessary, notice provisions of ICWA and related California law.  The remainder of Jovanni's appeal challenging the juvenile court's jurisdiction findings is dismissed as moot.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.