Filed 9/12/25  In re S.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | B341374 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.S., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 24CCJP01123A-B) |

APPEAL from an order of the Superior Court Los Angeles County, Linda L. Sun, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

C.S. (mother) challenges the juvenile court's order declaring her two minor children dependents under Welfare and Institutions Code section 300, subdivisions (b)(1).[1]  Mother contends that the single jurisdictional count against her—that her children were at risk of harm because she had physically abused S.H., a foster child under her care—was not supported by substantial evidence because the court erroneously considered evidence in the form of unqualified medical opinions.  Mother also argues the court erroneously shifted the burden of producing evidence to her, rather than the Department, under section 355.1  Respondent Los Angeles County Department of Children and Family Services (Department) contends mother abandoned her objections to statements of medical opinion in the Department's reports, and the court did not engage in burden shifting under section 355.1.  We agree with the Department, and therefore we affirm.

---

[1] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Background and Facts Leading to Department Investigation*

Mother has two children, S.S. (born August 2012) and K.S. (born September 2021).  Mother is herself a former foster child, and has fostered other children.  In June 2023, two foster children were removed from mother's home after they alleged mother had threatened them, but had not physically harmed them.

S.H., a five-year-old described as having high functioning autism, was placed in mother's home in December 2023.  S.H.'s social worker since May 2021 was child social worker Bridget McClain-Sanders.  Other than the events which led to the filing of the petition, McClain-Sanders was unaware of S.H. engaging in any self-harming behaviors.

In early February 2024, S.H. injured her elbow jumping from one bed to another at mother's home.  According to the medical notes, S.H. was seen in the emergency room on February 6, 2024, two days after the injury.  X-rays showed a fracture, and S.H. was given a long splint and referred to Dr. Anna Acosta to discuss surgical options.  Dr. Acosta saw S.H. on February 8, 2024, and discussed the risks and benefits of surgery with mother.  McClain-Sanders was unaware of S.H.'s injury

---

[2] Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all conflicts and drawing all reasonable inferences to uphold the court's order, if possible.  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

until February 8, 2024, when mother informed her that S.H.'s surgery was scheduled for February 12, 2024. McClain-Sanders advised mother she should have contacted McClain-Sanders at the time S.H. was injured. On February 12, 2024, medical notes indicate the planned surgery was cancelled "due to lack of authorization from court as patient is a foster child." According to Dr. Acosta, several attempts were made to reschedule the surgery, but foster mother was not answering the phone or returning calls.

On February 20, 2024, mother called McClain-Sanders in the morning to report S.H was causing bruising on her own arms, forehead, and legs. This was the first time mother had informed the social worker of S.H. engaging in self-harm. Inglewood Medical Center, where mother had taken S.H., also called McClain-Sanders to report the suspicious marks and bruising. S.H. had swelling on her face, and bruises on her forehead, both arms, and her shins. She was not dressed appropriately for the weather, her clothes were ripped, she wore only socks with no shoes, and her hair was in disarray. According to physician's assistant Robin Garner, S.H. was not wearing a splint or cast on her broken arm. When Garner asked mother why S.H. was not dressed appropriately and was not wearing shoes, mother went to the car to get shoes and clothing for the child, which Garner interpreted as indicating mother was staying in the car, not in the home. By the time mother returned to the clinic, McClain-Sanders had arrived. McClain-Sanders questioned mother, who stated the family was staying at a hotel due to S.H.'s behaviors. McClain-Sanders asked why S.H. was not wearing the temporary cast for her injured arm, and mother said the child got the cast wet and took it off. McClain-Sanders took custody of S.H. and

4

planned to take S.H. to an afternoon appointment to re-cast her broken arm. The social worker asked mother for S.H.'s booster seat, and mother provided a booster seat of exposed plastic with no padding. Mother confirmed to McClain-Sanders that S.H. rode in the car seat that way. The social worker used blankets from her car to create padding for S.H. to ride in the car seat.

That afternoon, Dr. Acosta observed bruising throughout S.H.'s body, at various stages of healing, and the bruising on S.H.'s right forearm—the arm with the fracture—showed the outline of a thumb and finger as if someone had grabbed S.H.'s arm. Based on the appearance and location of S.H.'s marks and bruises, Dr. Acosta believed the bruising was caused by another person, was not self-inflicted, and absolutely could not have been self-inflicted by a 5-year-old.

An investigating social worker interviewed mother on February 27, 2024. Mother informed the social worker that S.S. resided in Kentucky with her biological father during the school year, and with mother during Christmas and summer breaks. Mother also reported that K.S.'s father, G.H., was married with many children both in and out of wedlock, his wife was unaware of K.S.'s existence, and G.H. did not provide financial support for K.S. but was now raising concerns about mother's mental health and her care of K.S. because he was trying to claim K.S. on his taxes. Mother showed the social worker texts between mother and G.H. that raised the social worker's concerns that mother communicated with G.H. about S.H.'s bruises, discussed how G.H. "has been doing that to the children[,]" and told S.H. not to report the contact. Mother's home was in disarray, and she explained she was moving due to security concerns about the

building, not the recent allegations concerning S.H. or G.H.'s allegations regarding mother's mental health and her care of K.S.

## B.    *Petition and Hearing*

On April 9, 2024, the Department filed a petition alleging S.S. and K.S. were dependents under section 300, subdivision (b), based on mother's physical abuse of S.H. and her failure to protect S.H. from physical abuse by G.H.  Both children were detained from mother; S.S. was placed with her father in Kentucky, and K.S. was placed with a maternal aunt.

The Department filed its jurisdiction and disposition report in May 2024, recommending a family law custody order granting full physical custody of S.S. to her father, with monitored visits for mother.  Regarding K.S., the Department recommended reunification services for mother and G.H., including anger management, parenting, and conjoint counseling.

In early July, the court set the adjudication hearing for a contest.  In mid-July, mother filed two written objections to evidence contained in the Department's reports.  The first objected to admission of, and reliance upon, what mother contended were the unqualified medical opinions of Garner and Dr. Acosta.  Specifically, mother sought to exclude any medical opinions on the "cause of the marks on the child[]" based on an argument that the witnesses were not qualified to render such opinions.  Second, mother objected to admission of, and reliance upon, the hearsay statements of S.H. contained in the Department's reports.

At the August 29, 2024 adjudication hearing, the juvenile court admitted the parties' exhibits into evidence, including the

Department's jurisdiction and disposition report, over an objection not relevant to the current appeal. Although the Department made Garner and Dr. Acosta available to testify, mother elected not to examine them. After testimony from S.H. and McClain-Sanders, mother's counsel moved to strike all of S.H.'s statements throughout the reports, and the court granted the motion over the Department's objection.

After closing arguments, the court dismissed the allegation against G.H., expressly stating that "the only tenuous evidence" against G.H. was the text exchange between mother and G.H., and mother had defended G.H. and provided an explanation for the conversation. While the court did not find G.H. believable, it was dismissing the allegation against him "because there is no preponderance of the evidence against him."

Turning to the petition allegations of physical abuse against mother, the court found no alternative credible and plausible explanation for how S.H. had sustained her injuries absent abuse, and the explanation mother provided "was illogical, unreasonable, and refuted by all the medical professionals." Mother had accused S.H. of inflicting the injuries on herself, and continued to blame S.H. for dysregulated behavior, but the court found mother's explanation to lack credibility in light of Dr. Acosta's statements ruling out the possibility that S.H.'s injuries were self-inflicted, McClain-Sanders' testimony that S.H. had not previously or subsequently displayed aggression or defiant behaviors, and evidence that when mother took S.H. to Inglewood Medical Center, S.H. was not wearing her temporary cast, her clothing was not appropriate for the weather, and her booster seat lacked padding. The court acknowledged it was relying on circumstantial evidence, but found it to be more than a

7

preponderance of evidence in support of the allegation. It also found mother "entirely not credible" and sustained the allegation against mother. S.S. was placed with her father, and counsel was directed to prepare and submit a juvenile custody order giving S.S.'s father sole physical custody, joint legal custody, and monitored visits for mother. K.S. was placed with G.H., with family maintenance services in place, and family reunification services for mother. Mother appealed.[3]

## DISCUSSION

We review the juvenile court's jurisdictional findings for substantial evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We defer to the lower court on issues of credibility. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734.) " ' "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]" ' " (*In re I.J., supra*, at pp. 773–734.) "Substantial evidence must be of

---

[3] On July 18, 2025, we invited the parties to submit letter briefs addressing whether there was any reason why we should not take judicial notice of the juvenile court's orders terminating jurisdiction over both minors and dismiss mother's challenge to the jurisdictional finding as moot, either fully or in part. We agree with mother and the Department that mother's notice of appeal included a challenge to the order terminating jurisdiction over S.S., and there was no reason to reach the merits of the appeal as to one child but not the other.

8

ponderable legal significance.  It is not synonymous with 'any' evidence.  [Citation.]  The evidence must be reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 (*Dakota H.*)  " ' "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record."  [Citation.]' " (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

The juvenile court has jurisdiction over a child if the Department establishes by a preponderance of the evidence that allegations made pursuant to section 300 are true.  (§ 355; *In re Jonathan B.* (2015) 235 Cal.App.4th 115, 118–119.)  Section 300, subdivision (b)(1), authorizes jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ."  The purpose of juvenile law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2, subd. (a); see also *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 [the "goal of dependency proceedings is to safeguard the welfare of California's children"].)

## A.    *Mother's Failure to Renew Her Evidentiary Objection at the Adjudication Hearing Waived That Objection*

Mother contends that the court erroneously considered expert medical opinion by Garner and Dr. Acosta in deciding to sustain the jurisdictional allegations against her.  Mother argues

that she filed a written objection to the statements of medical opinion contained in the Department's jurisdiction and disposition report, and it was therefore error for the court to rely on the expert medical opinions to reach the conclusion that S.H.'s bruises were not self-inflicted.

Mother's argument about the court's reliance on expert testimony is not well taken. The juvenile court never ruled on mother's July 17, 2024 written objections, asking the court to strike from the Department reports medical opinion evidence from Garner and Dr. Acosta. Mother waived her objection when she did not renew it at the adjudication hearing more than a month later, and opted not to question those witnesses about their qualifications despite having both witnesses available. "When a court has not finally ruled on an in limine motion . . . Evidence Code section 353 requires a timely objection during presentation of the evidence" to preserve the issue. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 452.) " 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.' ([*Dakota H., supra,*] 132 Cal.App.4th [at pp.] 221–222 . . . .)" (*In re C.M.* (2017) 15 Cal.App.5th 376, 385.)

At a July 2, 2024 hearing, counsel for mother and the Department explained to the court that they were working on a number of discovery issues, and when mother's attorney stated her intent to file an objection to qualified expert opinions by Dr. Acosta, county counsel responded that he would subpoena Dr. Acosta for the hearing. Mother's written objections were filed on

10

July 17, 2024.  After that, county counsel advised the court he would subpoena Dr. Acosta and have her available to testify.  The adjudication hearing did not take place until more than a month later, on August 29, 2024.  At the adjudication hearing, the court asked counsel if there were any objections before admitting into evidence the Department's exhibits, including the detention and jurisdiction/disposition reports.  Mother did not bring her evidentiary objections to the court's attention at that time.  In fact, county counsel pointed out to the court that mother had filed objections, and so the county arranged to have Dr. Acosta and physician's assistant Garner available to testify in order to address those objections, and mother's counsel affirmed she did not plan to call either Dr. Acosta or Ms. Garner as witnesses.

As a counterpoint to mother's waiver of any prior objections to expert medical opinion, mother reiterated her written objections to S.H.'s hearsay statements at the adjudication hearing.  The court not only sustained mother's hearsay objection, but also enforced its ruling during argument, even when mother's attorney made reference to statements by S.H.  Mother's attorney raised no similar objections when county counsel referred to the observations and opinions expressed by Garner and Dr. Acosta, that "Gardner [*sic*] had concerns about whether the child could have suffered these injuries in the manner described.  But Dr. Acosta was very clear in that the injuries suffered by [S.H.] could not have occurred in the way that [mother] was describing.  And Dr. Acosta goes into considerable detail about the reasons why and the nature and type of the bruising and the discoloration, and that the bruising was at various ages."  Mother also did not object when the court

11

pointed to Dr. Acosta's opinions as the basis for its decision to sustain the allegation against mother.

The opinions and observations of Dr. Acosta and physician's assistant Garner, along with the testimony of McClain-Sanders, S.H.'s social worker, provide substantial evidence to support the court's determination that mother caused the harm suffered by S.H., and was sufficient to support the jurisdictional allegations that S.S. and K.S. were at risk of harm.

## B.     *Section 355.1 Presumption was Not Applied Here*

Mother contends the juvenile court improperly applied section 355.1 to shift the burden of producing evidence from the Department to mother.

Section 355.1, subdivision (a), provides:  "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor is of a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, the guardian, or other person who has the care or custody of the minor, that finding shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of [s]ection 300."  This is a "presumption affecting the burden of producing evidence."  (§ 355.1, subd. (c).)

We agree with the Department that the trial court did not shift the evidentiary burden to mother.  The court expressly found that the record contained a preponderance of circumstantial evidence to support the petition allegations, and it made no reference to section 355.1 or application of a statutory presumption.

12

## DISPOSITION

The juvenile court's order is affirmed.
NOT TO BE PUBLISHED.


                                    MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.