Filed 8/20/24  In re Kaylen B. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re KAYLEN B. et al., Persons Coming Under the Juvenile Court Law. | B330192<br><br>(Los Angeles County Super. Ct. No. 23CCJP01357A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>R.B.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Reversed with direction.

        Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

_____

R.B. (mother) appeals orders of the juvenile court adjudicating her daughters, Kaylen B. and Heaven B., juvenile court dependents and removing them from her custody. She contends insufficient evidence supported the court's jurisdictional findings and removal order. We agree that substantial evidence did not support the jurisdictional findings, and thus we reverse the jurisdictional findings and disposition orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.** *Prior Proceedings Involving Kaylen and Jaylen*

Mother has two minor daughters, Kaylen (born December 2011) and Heaven (born March 2016), and an adult son, Jaylen H. Genaro B. is Kaylen's presumed father, and Aaron B. is Heaven's alleged father.

In June 2013, the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition on behalf of Kaylen and Jaylen, who was at that time a minor, based on mother's and Genaro's violent altercations and substance abuse. The juvenile court sustained the petition and removed Kaylen and Jaylen from mother's care. In December 2015, the court returned Kaylen and Jaylen to mother, granted her legal and physical custody of them, and terminated jurisdiction.

**II.** *Current Proceedings Involving Kaylen and Heaven*

**A.** *The referral and investigation*

In February 2023, an anonymous caller reported that mother and her girlfriend were engaged in a physical altercation

in Kaylen's and Heaven's presence. The Department interviewed the children, who said they had witnessed two incidents of domestic disputes involving mother. In the most recent incident, mother and her girlfriend argued in the children's presence in the living room. Mother and her girlfriend then moved into their bedroom, where the children heard slapping noises and the sounds of things falling and bumping against the wall, but they did not see a physical altercation. The children also reported a prior incident, in which mother's then-boyfriend Joaquin hit mother in the face, arm, and body. Mother was doing the hair of one of her daughters during the incident and boiling water spilled on the child's chest.

The Department also interviewed the maternal grandparents, who said mother had dropped off Kaylen and Heaven with a truckload of their belongings a few weeks earlier. Mother did not live with the maternal grandparents, but for the past five or six years had regularly dropped off the children, left them for days at a time, and then picked them up without communicating a plan for their care. The maternal grandparents said mother never had the children in her care for more than a month at a time. When mother visited, she would become agitated "over being told 'how to parent,' " and an argument would usually occur. The maternal grandparents said mother's schedule was affecting the children's schooling because mother often dropped them off or picked them up "during academic instruction time . . . ."[1] As such, according to maternal

---

[1] According to a February 21, 2023 interview with maternal grandparents, mother had enrolled the children in online education "earlier in the year."

grandparents, the children's attendance, participation, and grades were declining.

When the social worker met mother and the children at a restaurant, mother refused to answer any of the social worker's questions or to allow the social worker to interview the children privately. Although she told the children to tell the social worker they were not abused, the social worker independently observed that they "did not appear to have any visible marks or bruises."

In March 2023, a social worker attempted to interview mother at the maternal grandparents' home. When confronted by the social worker about maternal grandparents' claim that mother did not reside at the grandparents' home, but rather only spent "one night out of the month at their home," mother began yelling at the social worker, "stating she sees the children every day and . . . resides in the home with the children and the maternal grandparents." When asked for further clarification, mother yelled profanities at the maternal grandparents and accused them of being "liars." She then told the children to pack their things and angrily left with them. For the next two weeks, mother did not communicate with the social worker, but the maternal grandparents said mother continued to drop the children off and pick them up without communicating a proper plan for their care and supervision.

In April 2023, Genaro (Kaylen's father) reported that he had just gotten out of prison after serving nearly three years. He admitted a history of drug use, which had hindered his ability to care for his daughter, but he wanted to be in her life now that he was sober and getting his life together. He was currently on parole, the conditions of which included that he remain sober and enroll in an outpatient program. He was submitting to drug and

alcohol testing, wore an ankle monitor, and was living in a transitional home.  He agreed to submit to an on-demand drug test, and in April 2023, he tested negative for drugs and alcohol.

Genaro said he and mother had not been together since 2013.  He had lived with Kaylen at some point but said he had been an inconsistent father because of his drug addiction.  He had tried to maintain contact with Kaylen, but due to mother's lack of stability, he had not always been successful in locating her.  He said he was "never really around" to parent the children.  Heaven, however, called him "Dad," and he was also close to Jaylen, whose name Genaro had tattooed on his arm.  Genaro consented to Kaylen's removal because he could not currently care for her.  He believed Kaylen should be released to the maternal grandparents.

**B.  *The dependency petition and detention***

In April 2023, the Department filed a dependency petition on behalf of Kaylen and Heaven pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) (counts b-1 through b-4) and (j) (counts j-1 and j-2).[2]  The petition alleged: (1) mother placed Kaylen and Heaven at risk of serious physical harm by exposing them to multiple violent verbal and physical altercations, including one that resulted in one of the children being burned (counts b-1, j-1); (2) mother left the children in the maternal grandparents' care without making an appropriate plan for their care and supervision (count b-2); (3) Genaro was unable and unwilling to care for Kaylen and had consented to her removal from his custody (count b-3); and (4) Genaro had a

---

[2]  All undesignated statutory references are to the Welfare and Institutions Code.

5

history of substance abuse, including methamphetamine, crack cocaine, cocaine, phencyclidine, marijuana, and alcohol, which rendered him incapable of caring for Kaylen (counts b-4, j-2).[3]

The juvenile court ordered Kaylen and Heaven detained on April 25, 2023.

### C.   *Jurisdiction and disposition report*

A social worker reinterviewed Heaven in May 2023. Regarding the recent incident with mother's girlfriend Paula, Heaven said Paula had been smoking weed and "acting crazy." Asked if mother and Paula ever got into a physical altercation, the child replied, "No.  Just argued."  After the argument, mother and the children stopped living with Paula.

Regarding the incident involving Joaquin, Heaven said she had been burned with hot water during a fight between mother and Joaquin.  Heaven said she had been four or five years old at the time.  Mother had not let Heaven be around Joaquin since then.  Heaven also said mother used to smoke weed but no longer did.  Heaven could not remember the last time she saw mother smoking weed.  She never witnessed Genaro using drugs or drinking alcohol.

The social worker also reinterviewed Kaylen.  Kaylen said the incident with Joaquin happened two years earlier.  While mother and Joaquin were arguing at mother's hair salon, Kaylen tried to intervene.  Kaylen stated, "[Joaquin] was ripping my shirt and trying to push me away from my mom.  My mom had

---

[3]     The Department's April 2023 dependency petition also alleged other counts (counts b-5 and d-1), including under section 300, subdivision (d), against Genaro, that were not sustained by the juvenile court.

6

hot water in her hand because she was finishing Heaven's hair. Joaquin pushed my mom and the water poured all over Heaven. She had bumps all over her and stuff from the hot water. I grabbed my mom's phone and went to the bathroom and tried to call the police but Joaquin busted in and snatched the phone." The next day, Joaquin came to the salon again, Joaquin was arrested, and mother obtained a restraining order against him.

Regarding the incident with Paula, Kaylen said Paula had come home drunk. Trying to persuade Paula to depart, mother said, "I have my kids here." In response, Paula told mother she had five days to leave. Kaylen said she and Heaven were safe with mother. Kaylen also said Genaro no longer smoked, and she denied witnessing Genaro using drugs or drinking alcohol.

Both Kaylen and Heaven said mother left the children with the maternal grandparents because she had to work. Kaylen said mother worked three jobs: as a security guard, doing hair, and taking care of the elderly. The only days the children went without seeing mother was when the maternal grandfather kicked mother out of the house.

When mother was reinterviewed May 2023, she said the children and the maternal grandparents were "holding . . . against" her that she has been in "different relationships with horrible people." Mother also stated the incident with Joaquin happened five years ago and she obtained a restraining order against him. The restraining order was issued in May 2021, set to expire in May 2026, and listed mother and her children as protected persons.

Mother said she and the children had lived with Paula until Paula kicked them out. Mother and the children lived with the maternal grandparents, and mother left the children only

when the maternal grandparents kicked her out. When mother left the maternal grandparents' home with the children, she would usually take them back to the maternal grandparents' home because she knew she needed help with the children. Mother said Kaylen and Heaven received medical and dental care. The Department reported the children exhibited age-appropriate development.

The maternal grandmother told the social worker that mother "would be gone all day and night and the kids wouldn't be able to get a hold of her." The maternal grandmother said mother did not make her children a priority and never accepted responsibility for her "[p]artying lifestyle." The maternal grandfather said mother came to the home "this past Friday" smelling of alcohol. He said he knew mother continued to smoke marijuana because he could smell it on her.

The maternal grandparents said Genaro was unable to care for Kaylen because he was in a halfway house. They believed Genaro would be able to care for Kaylen once he was done with his classes. Genaro, too, said he could not currently care for Kaylen, but hoped to be able to do so in the future.

### D. *The jurisdiction and disposition hearing and subsequent events*

In June 2023, the juvenile court sustained counts b-1 through b-4 and counts j-1 and j-2 of the petition. The court then declared Kaylen and Heaven court dependents, removed them from parental custody, and ordered them placed with the maternal grandparents. The court granted mother monitored

visitation and family reunification services.  That same day, mother timely filed a notice of appeal.

While this appeal was pending, on March 14, 2024, the court terminated its placement order and returned Kaylen and Heaven to mother's care.[4]

## DISCUSSION

Mother contends substantial evidence did not support the juvenile court's jurisdictional findings and removal orders.  As we discuss, we agree.

**I.**     ***Substantial Evidence Did Not Support the Juvenile Court's Findings of Jurisdiction over Heaven and Kaylen Under Section 300, Subdivision (b)(1)***

**A.**     ***Governing law and standard of review***

Section 300, subdivision (b)(1), provides in part that a child is within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child."  "The Department has the burden of proving . . . that the children are dependents of the court under section 300."  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)  It must prove three elements for a subdivision (b)(1) jurisdictional finding:  "(1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of

---

[4]     At mother's request, we took judicial notice of the juvenile court's March 14, 2024 minute orders.

9

serious physical harm or illness."  (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.)

"The relevant inquiry under section 300, subdivision (b)(1), is whether circumstances at the time of the jurisdictional hearing ' "subject the minor to the defined risk of harm." ' "  (*In re L.B.* (2023) 88 Cal.App.5th 402, 411.)  But " '[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' "  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)  "The court may consider past events in deciding whether a child presently needs the court's protection. [Citations.]  A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' "  (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602; accord, *In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions and may assist [the Department] in meeting [its burden of proof]"].)  " 'To establish a defined risk of harm at the time of the hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur." ' "  (*In re Cole L.*, at p. 602.)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' "  (*In re I.J.*, *supra*, 56 Cal.4th at p. 773; see *In re I.C.* (2018) 4 Cal.5th 869, 892; *In re J.S.* (2021) 62 Cal.App.5th 678, 685.)  " ' "We do not reweigh the evidence or exercise independent

judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.*, at p. 773.) "However, '[s]ubstantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.' " (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602.)

**B.** ***Substantial evidence did not support the court's jurisdictional findings under count b-1***

Mother contends the count b-1 jurisdictional findings were not supported by substantial evidence because the domestic violence incidents alleged did not create a current risk of serious physical harm to her daughters. We agree.

First, there was insufficient evidence that, at the time of the June 2023 jurisdiction hearing, the children were at current risk of harm from Joaquin's earlier violent altercation with mother. Although a child had been injured during that incident, there was no evidence that mother continued to have a relationship with Joaquin or that Joaquin continued to have access to the children. To the contrary, mother obtained a restraining order against him after the incident, and the evidence showed the children had no further contact with him. (See *In re Jonathan B.* (2015) 235 Cal.App.4th 115, 120 [reversing section 300, subdivision (b)(1), jurisdiction finding; determining that "the evidence did not show that mother would fail to protect the children from father's violent conduct" in part because mother obtained a restraining order after father attacked her]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 ["[p]hysical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence

11

that the violence is ongoing or likely to continue . . . ."].)  In addition, the incident with Joaquin occurred at least two years before the dependency petition was filed.  (See *In re Daisy H.*, at p. 717 [concluding the evidence was insufficient to support a finding that domestic violence placed the children at a current risk of physical harm where the physical violence happened at least two years before the Department filed the petition]; see also *In re L.B.*, *supra*, 88 Cal.App.5th at p. 411 [relevant inquiry under section 300, subdivision (b)(1), is whether circumstances at the time of the jurisdiction hearing subject the minor to the defined risk of harm].)[5]

Second, there was insufficient evidence that the children were at current risk of serious physical harm from the February 2023 incident involving Paula.  Although the Department contends the children's statements that they heard slapping, bumping against the wall, and objects falling indicate that mother's verbal altercation with Paula had escalated into a physical one, Kaylen and Heaven were not in the same room as mother and Paula when they heard those sounds and did not claim there had been a physical altercation.  To the contrary, they stated that the altercation was verbal, not physical.  There was no evidence that mother and Paula's verbal arguments presented a substantial risk of serious physical harm to the

---

[5]     There was also no evidence that mother and Joaquin had previously engaged in any physical altercations or that mother could have otherwise foreseen that Joaquin would strike her during their argument.  (See *In re Jonathan B.*, *supra*, 235 Cal.App.4th at pp. 120–121 [reversing jurisdiction finding by distinguishing the facts of the case from one in which "the father's violent conduct was entirely foreseeable"].)

children, and there were no witnesses who claimed there had been any physical altercation.  Moreover, as mother points out, and the Department on appeal does not dispute, the evidence indicates that, after the incident, mother ended the relationship with Paula and she and the children moved out of Paula's house.[6]

Finally, the Department mentions a host of miscellaneous issues other than domestic violence, such as mother arriving at the maternal grandparents' home smelling of alcohol and having unscheduled, unmonitored visits with the children in violation of a juvenile court order for monitored visitation.  But the dependency petition did not allege, and the juvenile court did not

---

[6]     The Department also relies on a purported 2018 incident of domestic violence alleged in a 2021 referral by an unnamed individual.  That referral was closed as "[i]nconclusive," and thus we do not consider it.  (See *In re Cole L.*, *supra*, 70 Cal.App.5th at p. 606, fn. 12 [the Department acted properly because it did not contend that the court should consider events described in referrals determined to be unfounded or inconclusive]; see also *In re Donovan L.*, *supra*, 244 Cal.App.4th at p. 1093 [speculation is not substantial evidence]; *In re Jonathan B.*, *supra*, 235 Cal.App.4th at p. 119 [a reviewing court will affirm jurisdictional findings if " 'there is reasonable, credible evidence of solid value to support them' "].)  To the extent the Department relies on mother's altercations with Genaro at issue in the prior dependency proceedings, we observe that the prior petition had been filed 10 years before the current jurisdiction hearing, and the juvenile court had terminated its jurisdiction under the prior petition in December 2015 by granting mother custody of Kaylen and Jaylen.  After the juvenile court terminated its jurisdiction in the prior proceedings, there was no evidence of any further violent altercations between Genaro and mother.

find, that jurisdiction under count b-1 was proper based on those issues now identified by the Department. We reject the Department's invitation to affirm based on jurisdictional findings neither alleged in the petition nor made by the juvenile court. (See *In re Cole L.*, *supra*, 70 Cal.App.5th at p. 606 ["The Department is thus asking us . . . to make an entirely new decision based on a factual finding . . . not made by the juvenile court. That decision and finding were for the juvenile court in the first instance, not this court"]; *In re V.M.* (2010) 191 Cal.App.4th 245, 253 ["[w]e cannot affirm a jurisdictional finding that was never alleged or made in the trial court"]; see also *In re Laura F.* (1983) 33 Cal.3d 826, 833 ["our task is . . . merely to decide whether there is sufficient evidence to support the findings of the trial court"].)

C. ***Substantial evidence did not support the court's jurisdictional findings under count b-2***

Mother contends the count b-2 jurisdictional findings were not supported by substantial evidence because the conduct alleged did not create a substantial risk of serious physical harm to the children. We agree.

The essence of count b-2 was that mother left the children with the maternal grandparents for long periods of time without providing an appropriate plan for the minors' care. But there was no evidence that the maternal grandparents were not appropriate caregivers. Despite having the burden of proof, the Department points to no evidence that the children's essential needs for their physical health and safety were not met when mother left the children with the maternal grandparents. Indeed, the juvenile court ordered the children placed with the maternal grandparents when it removed them from parental

14

custody.  Substantial evidence thus did not support the count b-2 jurisdictional findings.  (See *In re Andrew S.* (2016) 2 Cal.App.5th 536, 542 [section 300, subdivision (b), does not "justif[y] the juvenile court's assumption of jurisdiction over an otherwise well-cared-for child simply because an absent parent has not provided support"]; *In re X.S.* (2010) 190 Cal.App.4th 1154, 1160 [reversing section 300, subdivision (b), jurisdiction finding based on allegation that the father failed to provide for his son where "the child was well cared for in the home of his maternal grandmother, who helped support the child and provided for his necessities"; father's failure to provide neither caused serious physical harm nor created substantial risk of such harm].)

  *In re Athena P.* (2002) 103 Cal.App.4th 617, on which the Department relies, does not compel a contrary result.  In *Athena P.*, the juvenile court exercised jurisdiction over infant Athena under section 300, subdivision (g), which provides for jurisdiction, among other grounds, when " 'the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child.' "  (*Athena P.*, at pp. 621, 626.)  Athena's parents had been convicted and sentenced to several years in prison.  When Athena was sent to live with the grandparents, Athena's mother tried to a create a formal custody arrangement by signing certain documents but failed to file them.  (*Id.* at pp. 621–622.)  Affirming the juvenile court's subdivision (g) jurisdictional finding, the Court of Appeal explained that the juvenile court could properly conclude that the mother had been unable to arrange for Athena's care because the mother tried, but failed, to make the grandparents Athena's temporary legal guardians.  (*Athena P.*, at pp. 629–630.)

Here, the petition did not allege, and the juvenile court did not exercise, jurisdiction over Kaylen and Heaven under section 300, subdivision (g).  There was no evidence that mother was incarcerated at the time of the jurisdiction hearing.  (See *In re R.M.* (2024) 99 Cal.App.5th 240, 247 [" ' "section 300, subdivision (g) applies when, at the time of the [jurisdictional] hearing, a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child" ' "].)  Because mother was not incarcerated, there was no need to make the maternal grandparents the legal guardians of the children.[7]

In sum, substantial evidence did not support the count b-2 jurisdictional findings that were made by the juvenile court.

---

[7] The Department also argues that jurisdiction under count b-2 was proper based on mother's alcohol and marijuana use and a purported incident (involving mother starting to walk away from Jaylen when the child was in a parked car) in a 2006 referral.  Those jurisdictional allegations were unrelated to the risk of harm identified in the count—that is, the risk from leaving the two girls with the maternal grandparents without an appropriate plan—and were not made in the dependency petition, argued by the parties, or found by the juvenile court.  As discussed, we cannot affirm based on a jurisdictional finding neither alleged nor made in the juvenile court.  In addition, because the 2006 referral was by an unnamed caller and had been closed as "[u]nfounded," we do not consider it.

**D.** *There was not substantial evidence to support the court's jurisdictional findings under counts b-3 and b-4, and mother neither lacked standing nor forfeited her right to challenge them*

Mother contends counts b-3 and b-4 of the petition were not supported by substantial evidence because Genaro's alleged drug use and inability to care for Kaylen did not put the child at risk of harm. We agree.

Although Genaro could not care for Kaylen because of his drug use and incarceration, Kaylen's other parent—mother—was able to ensure the child's care. Genaro's inability to care for Kaylen thus did not put her at risk of harm.

The Department does not contend counts b-3 and b-4 were supported by substantial evidence, but instead urges mother lacks standing to challenge those findings and forfeited her right to do so by failing to challenge them below. We do not agree.

"[A] person aggrieved by a decision" has standing to appeal it. (*In re K.C.* (2011) 52 Cal.4th 231, 236.) " 'To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision.' " (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 999.) Because " ' "[a] jurisdictional finding good against one parent is good against both" ' " and " ' "the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent" ' " (*In re A.J.* (2022) 77 Cal.App.5th 7, 14), a jurisdictional finding based on Genaro's conduct subjects Kaylen to juvenile court jurisdiction. This detrimentally affects mother's legally cognizable interest in her daughter's companionship, custody, and care. (See *In re K.C.*, at p. 236 ["[a]ll parents, unless and

17

until their parental rights are terminated, have an interest in their children's 'companionship, care, custody and management . . . .' "]; *In re T.G.* (2010) 188 Cal.App.4th 687, 692 [a parent in a dependency case is aggrieved if " 'a juvenile court order . . . injuriously affects the parent-child relationship' "].) To the extent mother seeks to reunify with Kaylen and not have her parental rights terminated, the juvenile court's exercise of jurisdiction over the child directly subjects mother to the court's orders. Mother is aggrieved whether jurisdiction had been exercised based on her or Genaro's conduct.

Mother also did not forfeit her right to challenge the juvenile court's exercise of jurisdiction over Kaylen based on Genaro's conduct. At the jurisdictional hearing, mother asked the juvenile court to dismiss the entire petition, which necessarily included the b-3 and b-4 counts. Mother also specifically requested dismissal of the petition for insufficiency of the evidence of a current risk of harm. And, although mother did not expressly address counts b-3 and b-4, father did: He specifically argued there was insufficient evidence of a current risk of harm to sustain counts b-3, b-4, and j-2. Mother thus did not forfeit her right to argue that substantial evidence did not support the court's count b-3 and b-4 jurisdictional findings. (See *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 [determining mother did not forfeit an issue in part because "the older brothers' attorney squarely raised the issue at trial"].)

II. ***Substantial Evidence Did Not Support the Juvenile Court's Findings of Jurisdiction over Heaven and Kaylen Under Section 300, Subdivision (j)***

Section 300, subdivision (j), authorizes dependency jurisdiction when "[t]he child's sibling has been abused or

18

neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." Count j-1 alleged dependency jurisdiction based on the underlying allegations of count b-1, and count j-2 based jurisdiction on those of count b-4. Because we conclude substantial evidence did not support the count b-1 and b-4 jurisdictional findings, the same holds true, on this record, for the jurisdiction findings under counts j-1 and j-2. (See *In re Janet T.* (2001) 93 Cal.App.4th 377, 391–392 [because "we conclude the allegations of the petition sustained under section 300, subdivision (b) are not sufficient to support jurisdiction," "[i]t necessarily follows the sustained allegation of sibling abuse alleged under section 300, subdivision (j) must fail as well"; validity of subdivision (j) jurisdictional finding "was dependent on a sustained finding of a substantial risk of serious physical harm or illness under subdivision (b)"].)

## III. *The Disposition Orders Must Be Reversed*

In conclusion, we reverse the jurisdictional findings under all sustained counts for lack of substantial evidence. Accordingly, the juvenile court's disposition orders must also be reversed. (*In re Roger S.* (2018) 31 Cal.App.5th 572, 583 ["[b]ecause there was no basis for dependency jurisdiction, we also reverse the disposition order and the custody order the juvenile court issued"].)

19

## DISPOSITION

The juvenile court's jurisdictional findings and disposition orders are reversed.  The juvenile court is directed to dismiss the dependency petition.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


BERSHON, J.*


We concur:



EDMON, P. J.



ADAMS, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.